Good morning. Welcome to the United States Court of Appeals for the Third Circuit. Our first and only case today is Rosario v. Attorney General, number 24-1196. And we'll hear from Lee Pellant. May I reserve five minutes for rebuttal? That will be granted. You may proceed. Your Honor, may I please report? I have three points. First, the BIA's decision to be vacated because it failed to address several of Mr. Rosario's arguments on the merits. First, no complete and equitable tolling of the children of the Pikachu. In the common law, this Court held that the BIA cannot ignore a movement's equitable tolling argument as it appears. The common law controls the requirement. Second, to fill the gap, the BIA is missing reasoning to classify it as all at all a harmless error. Not only is Respondent's reasoning based on speculation, but the BIA showed what sort of analysis is required in the 158 decision, yet the BIA provided this panel no similar reasoning to square with the 158 decision and remand is necessary for the BIA to provide it. Finally, Respondent's jurisdictional arguments are a red herring because they are unsupported by both the facts and law. This Court has repeatedly held Zeng, Liam, Zhu, and others cited throughout the brief that BIA's decisions must at least indicate that it had actually considered the movement's arguments on the merits, and if it rejects those arguments, it needs to provide a reason why. To be certain, the BIA doesn't need to write an exegesis for every single argument that's raised, but it needs to say something. It needs to do that not only to provide non-citizens the process they're due, but to also give this Court the ability to review the BIA's decisions. Here, Mr. Rosario brought statutory motions to reopen and reconsider his 2012 removal order, and separately requested Sua Sponte reconsideration under the BIA's discretion. He argued that the time to bring his statutory motions had been equitably told because of the circuit's decision to inter in 2023. Let me ask you a question. Do any cases or decisions from our Court support your position that a change in law constitutes an extraordinary circumstance for purposes of equitable tolling? Your Honor, there are a few cases in this district. Now, the circuit itself has said that in some cases a change of law may not be a basis, but it hasn't ever categorically held, as far as I'm aware. Yes, this circuit, I am not aware of any authority that a change in law is categorically not a basis to grant equitable tolling. But in Silja, this Court had held that a change in law in the passage of the CAT order, at least, constituted a basis to bring a motion to reopen and reconsider the CAT order. Now, where a statute is passed after the fact and we are requesting that it be applied retroactively, this is a Second Circuit decision that clarified the law that existed as of the 1970s is not a removable basis, both at the time it was issued and up to today. Well, why do you ask us to just, let's go with your argument that the BIA should have considered this. Why should we consider it in the first instance, whether or not it's an extraordinary circumstance? Your Honor, we do not contend that this Court has to address it in the first instance. At a minimum, it should be remanded to the BIA for them to consider it in the first instance. Okay, so I hadn't interpreted you as asking us to decide that, but you're really just asking for remand. Yes, Your Honor. Ultimately, this case should be remanded to the BIA for reconsideration. However, in order to avoid duplicative petitions, if this Court finds that Minter is an extraordinary circumstance that warrants equitable tolling, then an instruction saying so, we would not oppose an instruction saying so. I'm sure you wouldn't. Absolutely not, Your Honor. But at a minimum, it should be remanded to the BIA for them to consider it in the first instance. You also spend time in your brief making a distinction between a motion to reopen and a motion to reconsider. Why does that matter? Your Honor, we brought both motions to reopen and motions to reconsider out of an abundance of caution. The BIA has treated both in similar circumstances. It was out of an abundance of caution, but if this Court were to find that it is more appropriate to be treated as a motion to reconsider, we would not oppose that at all, and if it's more appropriate to be treated as a motion to reopen, that is our contention as well. So either way, the outcome is the same because the BIA does not express either the motion to reopen or the motion to reconsider, and so the BIA needs to at least indicate that it has considered the regardless of what the motion is. Let me ask you a question. I was a little confused by a statement in your brief. I'll read it to you, but it's on page 22 of your brief. It says that Rosario, and this is a quote, was not removable at the time of his proceedings and was eligible for relief at that time. Now, it seems like the primary basis that you cite for reopening is which hadn't even been decided at the time, so how can you claim that Minter means he wasn't removable at that time? I don't understand how that all fits together, actually. Your Honor, just to clarify, this is page 22 of the opening? Of your brief, yep. Okay. Yeah, was not removable at the time of his proceedings and was eligible for relief at that time, and yet Minter wasn't even on the horizon yet. That's correct, Your Honor. What was meant by that particular quote is that the law that went into effect that served as the basis of Mr. Rosario's original removal order were statutes that were on the books in New York in the 1970s. Minter, and he was removed on that basis, finding that those were sufficient under the CSA to allow for removal. Although Minter did not come out until 2023, it was interpreting those 1970s and what the Second Circuit found is that those statutes do not match the CSA and cannot serve as a predicate basis for removal. So this isn't, as I suggested earlier, this isn't strictly a change in law scenario where a law comes out after the fact post-removal. This is a situation where the Second Circuit is clarifying a statute that has been on the books since the 1970s, and so under that law, he was not removable. It just took the Second Circuit a bit of time to issue that decision. When he was removed, he was removable, correct? Under the interpretations of the New York statutes that existed at that time, he was found removable, yes, Your Honor. He was found removable because at that time he was removable. He was found removable at that time, Your Honor, because the Second Circuit had not clarified at the time that the New York cocaine and controlled substance statutes were not indivisible and separable from the CSA. And so under the interpretation of the existing statutes at the time, he was removed on that basis. If the Second Circuit has since clarified, that wasn't a valid basis. And at a minimum, BIA should have at least expressed these arguments. Even though very cursory, why doesn't the sentence that there was no clear error of fact or legal error in the 2013 order reflect that the BIA considered your argument and rejected it? Your Honor, there are a few points there. First, in saying Liam is due, this Court has said such conclusory sweeping statements are not enough. And I am paraphrasing, Your Honor. But that isn't enough to indicate the BIA had actually considered the issues of the merits. What the rest of the BIA decision indicates is that it was evaluating Mr. Rosario's arguments under its sua sponte authority and not under the statutory obligation for a motion to reopen and reconsider. Now, the sua sponte authority is reserved for exceptional circumstances. It is an immensely high burden and rests entirely on the BIA's discretion. This high bar is not required for statutory reopening and reconsideration. Reopening requires only stating new facts supported by the evidence, and reconsideration requires identifying errors of law or facts supported by pertinent authority. And Congress afforded the BIA no discretion in that decision. And the 158 decision, Your Honor, highlights that Minter's impact here at least meets that threshold, or at least demands some consideration on the merits by the BIA. And Your Honor, just to touch on one last point on the jurisdictional arguments. These are red herring arguments, Your Honor. Final executed removal orders are often subject to motions to reopen and reconsider, and they are one of the reasons that they're afforded by statute. Respondent contends that the final executed 2012 removal order has become unreviewable by the present proceedings that Mr. Rosario is currently in, but Respondent has offered no reason why prior 2012 removal orders have been rendered non-final or unreviewable by this court. Okay, your time's up and you've left five minutes, so you've got a lot of time to cover. Thank you. Mr. McCord, Robert Thompson for the government. Let me first go after the jurisdictional argument here. So, when the petitioner came back into the country in 2017, he was placed back into removal proceedings. Once that happened, the prior removal order essentially was no longer a final order. It was a defunct order. It didn't exist anymore. And motion to reopen with regards to it, while it may— Why was it defunct? It was final and even executed. It was final and executed then, exactly. And even post-departure, had he sought to reopen that motion when he had been abroad, that order would have counted as a final, and his motion to reopen had been denied. He could have sought review from that because that final order was still active. The difficulty is that he can't be removed under that final order anymore because he's in new proceedings, and it's only when those new proceedings wrap up that there is a final order. The motion to reopen, say, had it been granted, he would have gotten LPR status, and that would have affected his current removal removal proceedings. There is no—that order from 2013 is no longer, except insofar as it got rid of his LPR status. As such, the motion to reopen doesn't relate to a final order of removal. If anything, at best, it relates to the ongoing proceedings now and what and how those proceedings shake out. And as a result, this—the motion to reopen and his seeking review from that is either premature or something that doesn't exist or moved. Moving on from that, with regard to the equitable polling issue, the government concedes that the board erred in not considering it, but it's harmless error. It's highly probable that the board would have found the same thing had it had the opportunity—had it actually addressed it. But how can we tell that? So that's—there's that language, right, that there is no clear error of fact or error of law in the board's decision. How do we even know what that's referring to? I mean, there's not even one additional sentence to indicate what that's supposed to mean. I understand that that seems very open. I also understand you didn't write the opinion, so we're not—this isn't an attack on you. No, no, the board's decision—and it looks very much like the board's decision in common, which involved someone who had had an approved I-130 after they had gone through proceedings. But the board's decision in the context of the motion to reopen and motion to reconsider—mainly thought it was a motion to reconsider—makes sense. The petitioner was seeking to reopen or reconsider the prior decision based on a decision from the Second Circuit, which is not the Third—this is the Third Circuit, so this board hasn't determined whether—hasn't construed the development provision. And so that's under circumstances where the petitioner conceded his removability in the first instance. And so the board could look—could easily have looked at that and said, at the time that this case was decided that the—that he was ordered removed, there was no clear error of law or error of fact, and there was no reason to go back to justice. Agreed, it is not a decision of ideal clarity, but in the meantime, we don't need one of those as long as we can sort of fill in the relevant parts. Let me go back to jurisdiction again. If it weren't for the second removal proceeding, the first one, even now, would be—we'd have jurisdiction to— You would have jurisdiction to consider that. Okay, can you explain again how the fact of the new removal proceeding removes our jurisdiction to review the first one? Right, so assume the petitioner had come in and his removal proceedings, and he had had a reinstated removal order, right? It would be reinstating that old order. And that order would have persisted throughout. There would be jurisdiction, but of course, let's see, 1252—is it 85? The reinstatement statute prescribes reopening and reconsideration. You have jurisdiction, but the statute would prevent the ability to reopen and reconsider. And the thing is, is that that's not what happened. He presented himself to the boarder, came in as an arriving alien. At that point, rather than—since reinstatement wasn't available, new proceedings were brought forward. And the new proceedings, essentially, you only get one. There's only one attempt at removal at a time. The government is now attempting to remove him in a wholly different proceeding. That old proceeding is no more. They can't remove him that way. And so the only way in which he can be removed, the only functional determination of whether he is under 11-847 is deportable, or ordering his deportation, is the current proceeding. The current proceeding is based on his new reentry indictment, or is it based on his prior? Oh, it's the— Right, the current removal. So his current criminal proceedings are based upon his being previously removed, according to the earlier order, and attempting to come back into the country. But the current removal—I'm asking about the current removal. What are the bases for removal that are alleged? The current removal proceedings, if I remember, there are two charges. There's one that he is an arriving alien who doesn't have valid documents. So that's an 11-8287 charge. And also that he is an individual who's been previously ordered to go, who is attempting to come back into the country without having received prior authorization from the attorney. So even though those are both new bases, different from the 2013, your assertion is that they still essentially render the prior removal order non-final? Essentially cause that final order to no longer be a way to remove him. It's no longer basis for his removal. Not that it's non-final. It is non-final because there's no— It is still a final order, right? It's not that there's—it's not a question about finality. It's about a question of whether there's a—whether that's a removal order. So if we send the first one back, and they say, yeah, we agree with the Minter argument and all that, then what's left? Is it pointless? Because the new removal proceeding supersedes all of that. The new removal proceeding supersedes all of that. But let's say he—let's say it went back and he got the motion reordered, or the Borton and Brennan motion reopened. He would be an LPR again, no doubt. But he would still be, you know, he would be subject to the current removal proceedings. And that would impact the current procedure, definitely. All of that would impact the removal proceedings that are ongoing. Because he's found to be an LPR. That's probably going to undermine the charge under—although I can't commit to that. I don't know. But it will certainly affect how the government treats the charge under 1182-A-7 of having invalid documents and also of whether or not he came back improperly without getting permission. So it's not pointless. It wouldn't be pointless. It's not a point— It wouldn't be that an academic would affect the new proceeding. It would affect the new proceedings. But it would affect those proceedings and be a part of those proceedings. And then if the board—say the immigration judge nonetheless found him removable, said, yes, you're an LPR, but under 1101-A-13-C, you fall into one of these subcategories of people who are arriving aliens, we can find you inadmissible, goes to the board, they— This court can review all of that then. At that point, all of it's reviewable because then you have an order of removal that is final. But at the moment, we just don't have that. So are you telling us—should we, under your view, dismiss this appeal? Yes, Your Honor. But mootness or just—or what? Mootness because there's no—that one's no longer—it's strange. It's kind of—it's either moot insofar as it attacks the old final. And it's premature insofar as there's no final order yet with regard to the other proceedings. Can you tell us a little bit about the other proceeding, where it is? It may not be what you're handling or anything. I asked from what—I think there are—there's a motion for prosecutorial discretion there that's outstanding. I know there is a question about the petitioner's ongoing competency in that proceeding. I think it might be being held for the ongoing criminal proceedings. And I know that the petitioner in the criminal proceedings has raised a collateral challenge to the—I guess what—to the underlying criminal proceedings there under 132060. And I think that those also sort of bring out a measure as well. So—but other than that, you know, beyond that is my knowledge.  Okay. Well, maybe our friend—your friend can maybe give us some more detail on that if possible. That would be great. One last point. If I didn't make it—and I'm not sure I did—with regard to the proceedings the board's reopening in the other case. If you look through the board's decision there, it is a Second Circuit case. All the sites, all the information from that case is one where the petitioner in that case or the respondent in that case was, you know, was found removable in the Second Circuit. So it makes a difference. I mean, it's not an instance in which the board is making different decisions in one case after another, even though the facts are the same. There are different facts. And the board is free to make decisions differently based upon them. Are you talking about a commensurate decision? I'm talking about—the petitioner's referred to the other unpublished board decision that's not— Right. The one that's on the agenda screen. Right. Or is an addendum. Right. That is not an addendum. That doesn't indicate that they might grant a motion to reopen if they'd reached the merits? I cannot tell. I mean, but given that that case was a Second Circuit case and came up there where MNTER is governing law, it makes a difference in how they work. The board has no further questions for me. All right. Thank you, Kevin. Thank you so much. Okay. Kevin, we'll hear a rebuttal now. Petitioner's count. Your Honor, I'd like to start with jurisdiction. Respondents suggest that because of the existence of the present removal proceeding, the prior final removal order has now somehow become defunct or has mooted any opportunity to challenge that final removal order here. I'm not aware of any authority— Well, if I'm not mistaken, it goes further than that. I think he's saying it's defunct and there's no need to attack it in any way. Your Honor, there is a reason to attack it here in that it serves as the predicate basis for Mr. Rosario's present removal proceedings in New York. According to the new proceedings, in a sense, vacated that removal order, and the current basis for removal would be the pending petition. In a sense, again, that that order was vacated, so to speak. Your Honor, there is nothing in the record suggesting the final order had been vacated, and in fact, it's our position that it is a predicate for the current removal proceedings. The current removal proceedings charged Mr. Rosario with reentering the country without a proper visa and as a non-citizen who had previously been ordered to remove. If he were removed erroneously, subject to the final 2012 removal order, then his current removal proceedings, in our opinion, would be baseless. He wouldn't have a basis to charge Mr. Rosario with those acts now. I don't know if this is the most apt analogy, but it's like a criminal conviction for a felony followed by a subsequent conviction for a felon with a gun. Just because there is a subsequent conviction for a felon with a gun doesn't make the previous felony go away. It is a predicate act, and if there's a basis to challenge the underlying predicate act, then this court should have jurisdiction to review that, and here, that is the mechanism of the motion to reopen and motion to reconsider. It's our position that this is the proper venue for this dispute as to his 2012 removal order to be resolved, but if the court were to find that this should all be handled in court, we would at least ask for some indication that that is where it should be addressed, and that's why it is raised there as well, because there is kind of an open question on who should be addressing it, but it's our position that this is the court to do it. And the one last thing I'd like to note, Your Honors, is that the respondent appears on this jurisdictional point to try to have it both ways. It challenges this 2012 removal order as unreviewable under 1252A here if there's another removal proceeding pending on any other ground, but in the current removal proceedings, it needs the 2012 removal order to be final and executed. That just can't be right, and I believe there's no dispute that if this court has jurisdiction, at a minimum, the equitable tolling arguments need to be addressed by the DIA and warrants remand. So unless Your Honors has any further questions. All right. Thank you, counsel. We thank counsel for their excellent written and oral arguments today. We especially thank Petitioner's Counsel and law firm for taking this case on as a pro bono matter. That was excellent. And what we'll do is we'll take the case under advisement,